UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ZHENGZHOU LONGGU TRADING CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-4352 |

## COMPLAINT

On behalf of Zhengzhou Longgu Trading Co., Ltd., ("Longgu" or "Plaintiff"), we hereby bring this civil action and allege the following:

### Parties

1. Plaintiff is a Chinese exporter of lysine subject to the antidumping Order on L–lysine From the People's Republic of China.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce ("Commerce").

### Jurisdiction

3. This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to contest the final determination by Commerce under 19 U.S.C. §1673d, in the antidumping duty investigation of L-lysine from the People's Republic of China. *See L–lysine From the People's Republic of China: Antidumping Duty Order*, 91 Fed. Reg. 58627 (September 16, 2026) ("Order"); *see also L–Lysine from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 46,406 (July 23, 2026) ("Final Determination").

4. Accordingly, this Court possesses jurisdiction over this action pursuant to 28

U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

**Standing**

5. Plaintiff is a foreign exporter of lysine from China. Accordingly, Plaintiff qualifies as an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

6. In addition, because Commerce made a Final Determination that was not lawful, or, otherwise overstated Plaintiff's antidumping duty margin, Plaintiff has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

**Timeliness**

7. Notice of the antidumping duty order was published in the *Federal Register* on September 16, 2026. Plaintiff filed a summons instituting this action on October 6, 2026, within thirty days after publication of the aforementioned antidumping duty order, serving notice of the action upon all other participants in the investigation on the same date. Furthermore, Plaintiff is filing this complaint within thirty days after filing the aforementioned summons. Therefore, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 and Rule 6 of the Rules of this Court.

**Facts**

8. On June 24, 2025, Commerce initiated an antidumping duty investigation on lysine from China. *See L-Lysine from the People's Republic of China: Initiation of Less-Than-Fair-Value Investigations*, 90 Fed. Reg. 26,782 (June 24, 2025).

9. On September 12, 2025, Commerce selected Longgu as a mandatory respondent in this investigation. *See* Additional Respondent Selection Memo (September 12, 2025).

10. Longgu timely responded to all questionnaires, including the initial questionnaires and several substantial supplemental questionnaires.

11. The Separate Rate Application and Section A questionnaire requested information on the period of investigation ("POI") (October 2024-March 2025) ownership, which Longgu provided. Both questionnaires asked about affiliation with other producers during the POI; Longgu accurately answered that it was not affiliated with any producers or customers during the POI. The Section A questionnaire asked for the history of Longgu; Longgu provided a basic description of when the company was formed. Through Longgu's response to other shareholder questions, Longgu provided information that it had former shareholders prior to the POI. In particular, Longgu provided documentation on a change in shareholders in May and March 2023. In subsequent supplemental questionnaires, Commerce never asked for a more detailed history or for historical shareholder information.

12. On March 6, 2026, Commerce published its affirmative preliminary determination. *See L-Lysine from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less-Than-Fair-Value, Postponement of Final Determination, and Extension of Provisional Measures*, 91 Fed. Reg. 11,030 (March 6, 2026). Commerce calculated a cooperative margin of 41.22 percent for Longgu.

13. In April 2026, Commerce verified Longgu in person at its facility in China. The verification agenda did not specifically request to prepare a history of shareholders or affiliates prior to the POI. In fact, the standard non-market economy verification outline issued to Longgu only asked one specific question about a specified number of years of history: for *current* managers and directors. There is no question requiring or prompting a discussion of the business of former shareholders. *See* Longgu Verification Outline at 7. At verification, Longgu again

presented information on its current shareholders and affiliation, including that the last shareholder change was in May 2023, prior to the POI. Commerce asked no questions about ownership or affiliation prior to the POI or the business of prior owners; and the standard outline did not require or prompt such discussion.

14. In June and July, well after the record was closed, various fraud allegations were filed by Petitioner and SAM Nutrition (an importer) regarding certain other U.S. importers' supposed affiliation to each other and to Longgu. Longgu and one of its U.S. Customers (a particular importer) responded to each of these allegations, providing reliable information that they were not affiliated during the period of investigation and did not misreport any information. Ultimately, Commerce found no fraud regarding Longgu or its Customers and did not rely upon the information submitted by Petitioner or SAM Nutrition in its final determination.

15. In the course of responding to these fraud allegations, Longgu provided a detailed history of its shareholders from its establishment through the period of investigation. Longgu 1st Rebuttal NFI (June 22, 2026) at Exhibits LG-1-5. This information provided that before the period of investigation, Longgu was once affiliated with Heshu Stockbreeding, another producer and exporter of subject merchandise, through a common owner. However, this affiliation ceased in May 2023, before the POI, when that owner sold her shares to Longgu's current shareholders.

16. On July 23, 2026, Commerce published its Final Determination. Commerce determined that due to Longgu not disclosing its affiliation prior to the investigation until very late in the proceeding, that Longgu withheld information and otherwise impeded the investigation. As the former affiliation to Heshu Stockbreeding also implicated certain of Longgu's customers that are currently affiliated with Heshu Stockbreeding, Commerce also found that this failure to report this prior affiliation also entails that Longgu falsely claimed that

the sales documents provided in its SRA were for a sale to an unaffiliated customer/importer. Commerce found Longgu was affiliated during the POI with customers due to the customer's relationship with Longgu's former shareholder. Commerce applied total adverse facts available ("AFA") to Longgu, assigning them the AFA China-wide entity rate of 139.83 percent.

17. This appeal ensued.

**Count I**

18. Plaintiff hereby incorporates, by reference, paragraphs 1 through 17 above.

19. Commerce's application of AFA to Longgu was unsupported by substantial evidence and otherwise contrary to law. 19 U.S.C. §1516a(b)(1)(B)(i) (The Court shall hold unlawful Commerce decisions that are unsupported by substantial evidence or otherwise not in accordance with the law.). Longgu did not withhold information or impede the investigation because the initial questionnaire and standard verification outline do not elicit such information; and because Commerce never made a direct request for pre-POI affiliation information.

**Count II**

20. Plaintiff hereby incorporates, by reference, paragraphs 1 through 19 above.

21. Commerce's application of AFA to Longgu was contrary to law because Commerce is obligated under 1677m(d) to have identified any deficiencies in any response and provide Longgu with an opportunity to remedy such deficiencies. Regardless, having taken the extreme step of opening the record for the late filed fraud investigation (whose factual premise existed prior to the comment deadlines on an open factual record), Commerce fully developed the record and thus there is no withheld information on this record.

**Count III**

22. Plaintiff hereby incorporates, by reference, paragraphs 1 through 21 above.

23. Commerce's application of AFA to Longgu was unsupported by substantial evidence because the record establishes that Longgu made no misrepresentation of its affiliation during the POI. 19 U.S.C. §1516a(b)(1)(B)(i); *see also* 19 U.S.C. §1677e. The record establishes Longgu's affiliation and shareholders during the POI, and therefore establishes that Longgu was not affiliated with Heshu Stockbreeding during the POI and is not affiliated with any of its U.S. customers. Therefore, Longgu made no misrepresentation and no necessary information was missing from the record. Accordingly, there was no factual premise for the application of adverse inferences.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the defendant:

(1) Declaring Commerce's application of AFA to Longgu as unsupported by substantial evidence and contrary to law;

(2) Declaring Commerce's determination that Longgu withheld information regarding its POI affiliation is as unsupported by substantial evidence;

(3) Declaring that Commerce violated Section 1677m(d) by not issuing a deficiency questionnaire to Longgu; and

(4) Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
THE INTER-GLOBAL TRADE LAW GROUP, PLLC
1156 Fifteenth St., N.W., Suite 1101
Washington, DC 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com

Dated: November 2, 2026